UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Chapter 7

Richard Martin Lewiston,                            Case No. 12-58599

　　　　Debtor.                                      Hon. Phillip J. Shefferly
_____/

Leslie Lewiston Etterbeek,                          Adversary Proceeding
                                                    No. 14-04828-PJS
　　　　Plaintiff,

v.

APTCAM, LLC, a Michigan limited
liability company, CAMAPT, LLC,
a Michigan limited liability company,
Richards-Pitt, LLC, a Michigan limited
liability company, RJJ Development
Associates, a Michigan limited general
partnership, Mickey Shapiro, individually
and as managing member of APTCAM, LLC
and CAMAPT, LLC, Murray Pitt, individually
and as a member of Richards-Pitt, LLC, and
Michael Lewiston,

　　　　Defendants.
_____/

## OPINION GRANTING MOTION TO REMAND

### INTRODUCTION

Leslie Etterbeek ("Etterbeek") is a member in a limited liability company. Etterbeek filed

a lawsuit in state court against five other members of the limited liability company and two

individuals related to two of those members. The defendants removed the lawsuit to the

bankruptcy court. Etterbeek filed a motion to remand the lawsuit back to state court or for the Court to abstain from hearing it. For the reasons set forth in this opinion, the Court has decided to grant the motion.

<u>JURISDICTION</u>

The District Court for the Eastern District of Michigan has jurisdiction to hear this motion pursuant to 28 U.S.C. § 157(a), § 1334(a) and (b), and § 1452(b). Pursuant to 28 U.S.C. § 157(b) and Local District Court Rule 83.50(a), the District Court for the Eastern District of Michigan has referred this motion to the Bankruptcy Court. "Although the Court's authority to decide this adversary proceeding has been challenged, the Court has jurisdiction to determine wither it in fact has subject matter jurisdiction." <u>Bavelis v. Doukas</u> (<u>In re Bavelis</u>), 453 B.R. 832, 844 (Bankr. S.D. Ohio 2011) (citing <u>Chicot County Drainage Dist. v. Baxter State Bank</u>, 308 U.S. 371, 376-77 (1940); <u>Pratt v. Ventas, Inc.</u>, 365 F.3d 514, 521 (6th Cir. 2004); and <u>Mata v. Eclipse Aerospace, Inc.</u> (<u>In re AE Liquidation, Inc.</u>), 435 B.R. 894, 900 (Bankr. D. Del. 2010) (applying <u>Chicot</u> to determining jurisdiction over an adversary proceeding)).

<u>FACTS</u>

The following facts are not in dispute.

On August 13, 2012, Richard Lewiston ("Debtor") filed a Chapter 7 case. Prior to filing his case, the Debtor was engaged in the real estate development business for many years. The Debtor listed on his schedule B an interest in many limited liability companies and other entities, including an interest in Apartments at Cambridge Company, LLC, a limited liability company ("AAC"). AAC owns and manages a condominium development project in Canton, Michigan,

-2-

that includes both vacant land subject to potential development, as well as already developed condominiums. In addition to listing an ownership interest in AAC, the Debtor also listed an account receivable owing to him by AAC in excess of $4.8 million.

AAC, its members and others filed four separate adversary proceedings against the Debtor. Three of the adversary proceedings sought multi-million dollar nondischargeable judgments against the Debtor under § 523 of the Bankruptcy Code. The fourth adversary proceeding sought denial of the Debtor's discharge under § 727 of the Bankruptcy Code. A separate lawsuit was also filed by Gene R. Kohut, the Chapter 7 trustee ("Trustee") against AAC in the United States District Court for the Eastern District of Michigan, which the District Court then referred to this Court. In that lawsuit, which is now an adversary proceeding in this Court, the Trustee sought a multi-million dollar judgment against AAC for alleged fraudulent transfers and for other claims. In addition to his own adversary proceeding, the Trustee also intervened as a party in the four adversary proceedings brought under § 523 and § 727 because they have common issues of fact and law with the Trustee's adversary proceeding.

The five adversary proceedings (collectively, the "Adversary Proceedings") have been very vigorously litigated, consuming a substantial amount of time and expense by all parties. The Court has held multiple hearings in them, including motions to dismiss, motions for summary judgment, discovery related motions, and many other pretrial proceedings. The Adversary Proceedings are complex, with many claims and counterclaims, involving millions of dollars claimed to be owed by AAC to the bankruptcy estate, and millions of dollars claimed to be owed by the Debtor to AAC and others. At the joint request of all of the parties to the

-3-

Adversary Proceedings, the Court consolidated them and set aside a very substantial block of time to try them.

After extensive proceedings held both in the bankruptcy case and in the Adversary Proceedings, the Trustee negotiated a settlement of most, but not all of the parties' disputes. On April 3, 2014, the Trustee filed a motion ("9019 Motion") seeking approval to enter the settlement pursuant to Fed. R. Bankr. P. 9019. Attached to the 9019 Motion was a term sheet ("Term Sheet"), signed as of March 25, 2014 by the Trustee, AAC, and by all other parties to the Adversary Proceedings except for the Debtor. Further, all individuals and entities that hold any interest in AAC also signed the Term Sheet, except for the Debtor, Etterbeek (his daughter), and Michael Lewiston (his brother). All told, there were 19 signatories to the Term Sheet.

The 9019 Motion summarized the content of the Term Sheet. First, the Term Sheet called for AAC to make substantial transfers of its personal and real property to the bankruptcy estate, consisting of over $558,000.00 of cash and its land and condominium development. The Term Sheet provided for the Trustee to then market and sell AAC's land and condominium development and split the proceeds with those members of AAC who were signatories to the Term Sheet, with the bankruptcy estate retaining 65-1/2% of the net sale proceeds, and the other 34-1/2% of the net sale proceeds distributed to those members of AAC who had signed the Term Sheet. In addition, the bankruptcy estate would receive a release of certain charging orders against the Debtor's interest in AAC that were entered by a state court in Michigan prior to the time that the bankruptcy case was filed.

-4-

In exchange for these benefits, the Trustee agreed to dismiss all of his claims in the Adversary Proceedings against AAC and its members, and to release any claims that the Trustee may have either to any remaining cash held by AAC, or to the 34-1/2% of net sale proceeds that the Term Sheet directed to be distributed to the other signatories to the Term Sheet upon the sale of the land and condominium development by the Trustee. Finally, the Trustee agreed to withdraw any objections that he had filed to any proofs of claims filed in the Debtor's bankruptcy case by any of the signatories to the Term Sheet.

The Debtor was not a party to the Term Sheet. However, he stood to receive substantial benefits under it because AAC and those members of AAC who signed the Term Sheet, also agreed to dismiss all of their claims in the Adversary Proceedings seeking nondischargeable judgments against the Debtor under § 523 of the Bankruptcy Code. The Debtor would no longer have to defend the § 523 Adversary Proceedings seeking nondischargeable multi-million dollar judgments against him, even though he would still have to defend the § 727 objection to discharge. The Term Sheet did not call for the Debtor to give or do anything in return. The Debtor did not file any objection to the 9019 Motion.

In sum, the Term Sheet provided the Bankruptcy estate with substantial assets to administer and ended very expensive, time consuming, and risky litigation. All claims and counterclaims by or against all parties to the Adversary Proceedings would be settled, with one exception, that being the adversary proceeding objecting to the Debtor's discharge under § 727 of the Bankruptcy Code. All of the Adversary Proceedings other than the one objecting to the Debtor's discharge would be dismissed in their entirety with prejudice.

At the time that the Trustee filed the 9019 Motion, creditors of the Debtor had filed proofs of claims in the bankruptcy case aggregating over $82 million. None of the creditors filed objections to the 9019 Motion, and one of the creditors, Today's Bank of Northwest Arkansas, which holds an $11 million judgment against the Debtor, filed a concurrence in the 9019 Motion.

Although neither the Debtor nor any creditors of the Debtor objected to the 9019 Motion, two objections were filed, both by family members of the Debtor, Michael Lewiston and Etterbeek. Michael Lewiston and Etterbeek were not parties to the Adversary Proceedings. Neither had filed a proof of claim in the bankruptcy case nor did the Debtor list them on his schedules as creditors. Their objections to the 9019 Motion did not argue that the settlement described in the Term Sheet was not a good deal for the bankruptcy estate, or that it was otherwise not in the best interest of the bankruptcy estate and its creditors. Instead, Michael Lewiston and Etterbeek argued that the Term Sheet was not a good deal *for them*, citing their interests as minority members of AAC, Michael Lewiston holding an 8.5% interest and Etterbeek a 2% interest. They alleged that even though the Term Sheet was signed by all managing and other members of AAC except for the Debtor and themselves, AAC was not, as a matter of state law in Michigan, authorized to enter into the Term Sheet based on their construction of AAC's operating agreement, the amendments to the operating agreement, and Michigan statutory and common law. Although the Trustee and the bankruptcy estate may not be harmed by this lack of authority, Michael Lewiston and Etterbeek argued that they were.

The Court held a hearing on the 9019 Motion on May 7, 2014. Because the Court found that certain of the legal issues raised by Michael Lewiston and Etterbeek required additional

briefing, the Court continued the hearing until May 14, 2014. By the time of the continued hearing, Michael Lewiston had reached an agreement with the Trustee to withdraw his objection to the 9019 Motion. That left Etterbeek. Etterbeek still claimed that even though she was only a 2% owner of AAC, and was not herself a managing member of AAC, nonetheless, AAC did not have the requisite authority to enter into the Term Sheet with the Trustee. Etterbeek further claimed that by entering into the Term Sheet, AAC, its managing members and its other members (excluding the Debtor) acted in breach of their obligations to Etterbeek under applicable Michigan law, and treated Etterbeek unfairly with respect to her 2% interest in AAC.

At the hearing on the 9019 Motion, the Court first reviewed the standard that it was required to apply by Fed. R. Bankr. P. 9019 and by relevant decisions of the United States Supreme Court and the Sixth Circuit Court of Appeals, when determining whether to grant a trustee's request to enter into a settlement on behalf of a bankruptcy estate. The Court summarized the relevant factors to consider: (i) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (ii) the probability of success in the litigation; (iii) the difficulties, if any, to be encountered in the matter of collection; and (iv) the paramount interest of the creditors and the proper deference to their reasonable views in the premises.[1]

The Court considered each of these factors in the context of the Term Sheet and the 9019 Motion. The Court found that the Adversary Proceedings that would be resolved by the

---

[1] For authority, the Court relied on <u>TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968); <u>Bauer v. Commerce Union Bank</u>, 859 F.2d 438, 441 (6th Cir. 1988); and <u>In re Dow Corning Corp.</u>, 198 B.R. 214, 221-22 (Bankr. E.D. Mich. 1996).

Term Sheet are very complex, and would be expensive and time consuming to continue to litigate. The Court observed that the probability of success by the Trustee in the Adversary Proceedings was by no means certain. The Court noted that it had already heard multiple motions in the Adversary Proceedings, involving complicated issues of fact and law. The Court also noted the difficulties that the Trustee may encounter in collection, even if the Trustee is successful in prosecuting the Adversary Proceedings. Finally, and most importantly, the Court pointed out that the proofs of claims filed by the creditors in this bankruptcy case aggregate over $82 million, and not a single creditor opposed the 9019 Motion. In fact, most of the creditors were signatories to the Term Sheet. The Court found that the creditors overwhelmingly approved the settlement negotiated by the Trustee in the Term Sheet and the only objector, Etterbeek, was not even a creditor in the case. The Court held that all of the relevant factors weighed heavily in favor of granting the 9019 Motion. The Court observed that Etterbeek's objection did not go to any of those factors, but instead complained about the conduct of AAC and its constituent members, all of whom are non-debtors, in entering into the Term Sheet with the Trustee. After a thorough discussion of all of the relevant factors, the Court overruled Etterbeek's objection.

In making its ruling, the Court explained that it was deciding only the 9019 Motion, and whether the Trustee should be permitted to enter into the Term Sheet, as the Trustee requested in the 9019 Motion. The Court noted that AAC did not ask for, nor did it need to ask for, this Court's permission to enter into the Term Sheet. The Court expressly stated that it was not adjudicating any of the claims by Etterbeek that the non-debtor members of AAC were treating

Etterbeek unfairly or acting beyond their authority under the operating agreement, amendments to the operating agreement, or applicable Michigan law. The Court emphasized that Etterbeek is a non-debtor, and that the other members of AAC of whom she complains, are themselves all non-debtors. The Court held that it did not have jurisdiction, in the context of the 9019 Motion, to adjudicate any disputes between Etterbeek, on the one hand, and those members of AAC who are not debtors in this case, on the other hand.

Admittedly, the Court did make a limited inquiry into the authority of the managing members of AAC to enter into the Term Sheet, but it did so only for the express purpose of considering whether or not the 9019 Motion should be granted. In other words, the Court made its limited inquiry solely for the purpose of evaluating whether the Trustee's decision to enter into the Term Sheet was likely to lead to further litigation *for the bankruptcy estate* and, if so, what effect it may have *on the bankruptcy estate*. The Court was persuaded that the Trustee had fully considered what impact, if any, that Etterbeek's state law claims against other non-debtor members would have upon the settlement that the Trustee had reached. The Court accepted the Trustee's explanation as to why the Trustee was satisfied with the authority of AAC and its members to sign the Term Sheet and enter the settlement with the Trustee. The Court granted the 9019 Motion, notwithstanding the claims made by Etterbeek against AAC and the non-debtor members of AAC. The Court concluded by expressly stating that its ruling granting the 9019 Motion was made without prejudice to Etterbeek's rights to assert any claims that she may have under applicable Michigan law with respect to or against AAC or any of the non-debtor members of AAC. On May 16, 2014, the Court entered an order granting the 9019 Motion and

authorizing the Trustee to enter into the Term Sheet. No party filed any appeal from that order. It is now a final order.

Following the entry of the order granting the 9019 Motion, the Trustee, AAC, and the other signatories to the Term Sheet dismissed all of the Adversary Proceedings except for the § 727 objection to discharge, and otherwise implemented the transactions described in the Term Sheet. AAC transferred the cash, land and condominiums to the Trustee, and the Trustee is administering such property as property of the bankruptcy estate.

On July 14, 2014, Etterbeek filed a six count complaint in the Circuit Court for the County of Wayne, State of Michigan ("State Court Lawsuit") against seven entities and individuals ("Defendants"). Five of the Defendants are members of AAC, and two are individuals who are managing members of two of the members of AAC. The complaint does not name the Trustee, the Debtor, or AAC as defendants. Count I, titled "Breach of Contract," claims that the Defendants breached their obligations to Etterbeek under AAC's operating agreement. Count II, titled "Breach of Fiduciary Duty," claims that the Defendants breached fiduciary duties that they owe to Etterbeek under Michigan law. Count III, titled "Member Oppression," claims that the Defendants interfered with Etterbeek's rights as a member of AAC. Count IV, titled "Civil Conspiracy," claims that some of the Defendants conspired to deprive Etterbeek of her statutory rights as a member in AAC. Count V, titled "Conversion," claims that the Defendants converted Etterbeek's property. Count VI, titled "Fraudulent Conveyance," claims that the transfer of AAC's assets to the Trustee without any provision for payment to Etterbeek constitutes a fraudulent conveyance. The complaint also states that it "gives notice

to all Defendants" that Etterbeek has filed a notice of lis pendens against the real property owned, managed, or controlled by AAC.

On August 8, 2014, the Defendants filed a notice of removal of the State Court Lawsuit to the bankruptcy court. The notice of removal alleges that the claims made in the State Court Lawsuit are within the jurisdiction of the bankruptcy court because they are core proceedings or, in the alternative, they are claims that are related to the Debtor's bankruptcy case. On September 10, 2014, Etterbeek filed a motion to remand ("Motion to Remand") (ECF No. 15). The Motion to Remand requests that the Court either remand the State Court Lawsuit to the Wayne County Circuit Court or, in the alternative, abstain from hearing it. On September 29, 2014, the Defendants filed a response (ECF No. 16). On October 9, 2014, Etterbeek filed a reply (ECF No. 19). On October 15, 2014, the Court heard the Motion to Remand and took it under advisement.

## POSITIONS OF THE PARTIES

Etterbeek makes three basic arguments in the Motion to Remand. First, Etterbeek argues that the Defendants' removal of the State Court Lawsuit was improper because 28 U.S.C. § 1452(a) only permits a party to remove a claim or cause of action to this Court if this Court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334(b). Etterbeek contends that none of the claims that she makes against the Defendants in the State Court Lawsuit arise under title 11, arise in title 11, or are related to a case under title 11. Therefore, they are not within the jurisdictional grant of § 1334(b). Because this Court has no jurisdiction over the claims that

-11-

Etterbeek makes in the State Court Lawsuit, the Defendants' removal was not permitted under § 1452(a).

Second, Etterbeek argues that the only possible way for this Court to have jurisdiction over any of the claims in the State Court Lawsuit is if this Court somehow finds that the State Court Lawsuit could conceivably have an effect upon the Debtor's bankruptcy case. If so, then the State Court Lawsuit could be held to be non-core, or related to the Debtor's bankruptcy case, and therefore within the jurisdictional grant of § 1334(b). But even if the State Court Lawsuit is a related proceeding, Etterbeek argues that the mandatory abstention provision of § 1334(c)(2) requires this Court to abstain from hearing her claims.

Third, Etterbeek argues that even if this Court wrongly finds that the State Court Lawsuit is a core bankruptcy proceeding over which the Court has jurisdiction under § 1334(b), this Court should permissively abstain from hearing it under § 1334(c)(1) and/or remand it under § 1452(b).

The Defendants make two basic arguments in their response. First, the Defendants argue that the State Court Lawsuit is nothing more than an end-run on the Court's order granting the 9019 Motion and authorizing the Trustee to enter into the Term Sheet because it directly affects the property transferred by AAC to the bankruptcy estate under the Term Sheet, which is now property of the bankruptcy estate. According to the Defendants, this means that all of the claims in the State Court Lawsuit are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate), (E) (orders to turn over property of the estate, (N) (orders approving the sale of property), and (O) (other proceedings affecting the liquidation

of assets of the estate).  As such, the Court has jurisdiction over them under § 1334(b).  Further, since the property transferred by AAC to the bankruptcy estate under the Term Sheet is now property of the bankruptcy estate, jurisdiction exists in this Court pursuant to § 1334(e)(1) which grants exclusive jurisdiction to this Court over property of the estate.  Therefore, because this Court has jurisdiction under both § 1334(b) and (e)(1), the Defendants argue that removal under § 1452(a) was proper.

Second, even if the State Court Lawsuit is not a core proceeding, it is, at minimum, a non-core, related proceeding over which this Court has jurisdiction under § 1334(b) because the outcome of the State Court Lawsuit could conceivably have an effect upon the administration of this bankruptcy case.  Again, the Defendants argue that removal under § 1452(a) was proper.

Both of the Defendants' arguments focus solely on this Court's jurisdiction over the claims in the State Court Lawsuit, and the propriety of removal under § 1452(a).  The Defendants do not specifically respond to Etterbeek's arguments in support of remand or abstention.

## DISCUSSION

### Removal

28 U.S.C. § 1452 governs the removal of claims to federal court.  In relevant part, it provides as follows:

> (a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

-13-

Removal is only proper under § 1452(a) if a claim or civil action is one over which the district court has jurisdiction under § 1334. Therefore, the first question to be answered in considering the Defendants' removal of the State Court Lawsuit is whether the State Court Lawsuit is a claim or cause of action over which the district court has jurisdiction under § 1334. If not, then the Defendants' removal of the State Court Lawsuit was improper and the Motion to Remand must be granted.

Section 1334(a) provides that "district courts shall have original and exclusive jurisdiction of all cases under title 11," in other words, all bankruptcy cases. See Stewart v. Henry (In re Stewart), 62 Fed. Appx. 610, 613 (unpublished), 2003 WL 1827221, at *3 (6th Cir. Apr. 7, 2003) ("The term 'cases under title 11' as used in section 1334(a) is a term of art signifying an action commenced in a federal district court or bankruptcy court with the filing of a petition pursuant to 11 U.S.C. §§ 301, 302 or 303.") (quotation marks and citation omitted). Section 1334(b) then confers original but not exclusive jurisdiction in the district court of three other types of civil proceedings: civil proceedings arising under title 11, arising in a case under title 11, or related to a case under title 11.[2]

---

[2] 28 U.S.C. § 157(a) states that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Local District Court Rule 83.50 accomplishes such referral in this district. It provides as follows:

(1)     Unless withdrawn by a district judge, all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to bankruptcy judges. The court intends to give bankruptcy judges the broadest possible authority to administer cases and proceedings properly within their jurisdiction.

Civil proceedings "arising under" title 11 "involve causes of action created or determined by a statutory provision of title 11." Mich. Employment Sec. Comm'n (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991). An example of a civil proceeding arising under title 11 is an action to avoid a preferential transfer under § 547 of the Bankruptcy Code. Moyer v. Bank of America (In re Rosenberger), 400 B.R. 569, 572-73 (Bankr. W.D. Mich. 2008) ("An avoidance action, such as the Trustee's preference action here, is the classic example of a proceeding based upon 'a substantive right created by federal bankruptcy law' as referred to by the Sixth Circuit.") (quoting Browning v. Levy, 283 F.3d 761, 773 (6th Cir. 2002)).

Civil proceedings "arising in" a case under title 11 "are those that, by their very nature, could arise only in bankruptcy cases." In re Wolverine Radio, 930 F.2d at 1144. Proceedings arising in a case under title 11 "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." McDaniel v. ABN AMRO Mortgage Group, 364 B.R. 644, 647 (Bankr. S.D. Ohio 2007) (quotation marks and citation omitted). "Examples of 'civil proceedings arising in' a case under Title 11 include administrative matters; counterclaims by the estate against persons filing claims against the estate; orders to turn over property of the estate and determinations of the validity, extent or priority of liens." Id. (citation omitted).

A civil proceeding is "related to" a case under title 11 "if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy . . . ." Id. Put another way, a civil proceeding is "related to" a case under title 11 if "'"the outcome could conceivably have an effect on the estate being administered in

-15-

bankruptcy.""" Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC),

728 F.3d 567, 577 (6th Cir. 2013) (quoting Lindsey v. O'Brien, Tanski, Tanzer and Young

Health Care Providers of Connecticut (In re Dow Corning Corp.), 86 F.3d 482, 489 (6th Cir.

1996) (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984))). "'An action is related to

a bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of

action (either positively or negatively) and which in any way impacts upon the handling and

administration of the bankrupt estate.'" Id. (quoting In re Dow Corning Corp., 86 F.3d at 489).

The Defendants do not cite to any provision in the Bankruptcy Code that creates or

determines any of Etterbeek's claims, nor explain why Etterbeek's state law claims would not

exist but for a bankruptcy case. Nonetheless, the Defendants argue that the claims in the State

Court Lawsuit do fall within the jurisdictional grant of § 1334(b) either as "arising under" or

"arising in" the Debtor's bankruptcy case because they are core proceedings under 28 U.S.C.

§ 157(b)(2)(A), (E), (N) or (O).

The Sixth Circuit Court of Appeals recently explained the difference between core and

non-core proceedings in Bavelis v. Doukas (In re Bavelis), __ F.3d __, 2014 WL 6678378, at *6

(6th Cir. Oct. 7, 2014).

> The distinction between core and noncore matters is fundamental to a bankruptcy
> court's jurisdiction. This court has defined a core proceeding as one that "either
> invokes a substantive right created by federal bankruptcy law or one which could
> not exist outside of the bankruptcy." Lowenbraun v. Canary (In re Lowenbraun),
> 453 F.3d 314, 320 (6th Cir. 2006) (internal quotation marks omitted); see also
> Waldman v. Stone, 698 F.3d 910, 917-22 (6th Cir. 2012) (distinguishing between
> a bankruptcy court's authority in core versus noncore proceedings). A
> nonexhaustive list of examples of what constitutes a core proceeding is set forth
> in 28 U.S.C. § 157(b)(2). Noncore proceedings, in contrast, are those causes of
> action that (1) are not identified as a core proceeding under 28 U.S.C. § 157(b)(2),

(2) existed prior to the filing of the bankruptcy case, (3) would continue to exist independent of the provisions of Title 11 of the United States Code, and (4) are not significantly affected as a result of the filing of the bankruptcy case. Duncan v. Deutsche Nat'l Bank Trust Co., No. 11-cv-2006, 2012 WL 4322667, at *3 (N.D. Ohio Sept. 20, 2012) (unpublished) (citing In re Walton, 104 B.R. 861, 864 (Bankr. S.D. Ohio 1988)).

The Court rejects the Defendants' contention that Etterbeek's claims in the State Court Lawsuit are core proceedings. All of the claims made in the State Court Lawsuit are based upon Michigan law. None of them invoke a right either created by the Bankruptcy Code or dependent upon a bankruptcy case. Further, all of them exist outside of the Bankruptcy Code and outside of the Debtor's bankruptcy case. Neither the Trustee nor the Debtor are named as defendants in the State Court Lawsuit, and Etterbeek does not request any relief in the State Court Lawsuit from the bankruptcy estate. Etterbeek's claims do not concern the administration of this estate and are not core under § 157(b)(2)(A). Further, as the State Court Lawsuit does not seek an order to turn over property of the bankruptcy estate, it is not a core proceeding under § 157(b)(2)(E). And because the State Court Lawsuit neither requests nor opposes an order approving sale of property of the bankruptcy estate, it is also not a core proceeding under § 157(b)(2)(N). Finally, it does not affect the liquidation of assets of the estate, and is therefore not a core proceeding under § 157(b)(2)(O). Simply put, none of the claims in the State Court Lawsuit are core proceedings, and none of them arise either under a bankruptcy case or in a bankruptcy case. Although the Defendants are correct in stating that this Court has exclusive jurisdiction under § 1334(e)(1) over all of the property of the Debtor's bankruptcy case, that assertion does not grant this Court jurisdiction over Etterbeek's claims against non-debtors in the State Court Lawsuit.

-17-

If this Court does have jurisdiction at all over the State Court Lawsuit under § 1334(b), it will only be because the State Court Lawsuit may conceivably have an effect upon the Debtor's Chapter 7 case, and may therefore constitute a non-core, related proceeding. Etterbeek argues that the claims in the State Court Lawsuit cannot conceivably have any effect on the Debtor's bankruptcy case because all of her claims are based upon state law, all of her claims are made against non-debtor parties, the State Court Lawsuit does not name as a defendant either the Debtor or the Trustee, and the State Court Lawsuit seeks no relief against the bankruptcy estate. In support, Etterbeek also relies strongly upon statements made by this Court at the hearing on the 9019 Motion, at which time the Court stated that it did not have jurisdiction over Etterbeek's claims against the non-debtor members of AAC, at least in the context of the 9019 Motion and the hearing to determine whether or not to grant the Trustee authority to enter into the Term Sheet.

The Defendants counter that there is non-core, related to jurisdiction because the State Court Lawsuit could substantially affect the administration of this bankruptcy case. The Defendants point specifically to count VI, titled "Fraudulent Conveyance," and its request for an adjudication that the transfer of AAC's assets to the bankruptcy estate without paying Etterbeek what she is owed is a fraudulent conveyance as to Etterbeek. The Defendants posit that if Etterbeek is successful in prosecuting the State Court Lawsuit, she may well try in the future to impede the Trustee's ability to sell the property transferred to the bankruptcy estate by AAC under the Term Sheet. The Defendants argue that the Court should not permit this end-run

-18-

on its order granting the 9019 Motion, since that order is now a final order, from which Etterbeek did not appeal.

The Defendants have the better argument. Count VI of the complaint in the State Court Lawsuit expressly seeks an adjudication that the transfer by AAC of its property to the Trustee pursuant to the Term Sheet is a fraudulent conveyance under Mich. Comp. Laws Ann. § 566.31 et seq. The prayer for relief in count VI expressly requests the entry of an "order setting aside any transfer of AAC's assets to the extent that such transfer operates to deprive [Etterbeek] of her right to receive payment of the obligations owed her, together with her costs and attorney fees." To be sure, Etterbeek did not name the Trustee (or even AAC) as a defendant in the State Court Lawsuit, so even if she prevails, that does not mean that the Trustee has to give back the property transferred to the bankruptcy estate by AAC under the Term Sheet. But if Etterbeek is successful in prosecuting count VI in the State Court Lawsuit, it is conceivable that Etterbeek may try to use a favorable ruling to seek some form of relief from the bankruptcy estate. That request may include recovering some of the property transferred by AAC to the Trustee, objecting to a proposed sale of the property by the Trustee under § 363, or some other remedy.[3]

Etterbeek's true purpose in this regard is revealed by her statement in the complaint that she "gives notice" of the filing of a lis pendens on the real property owned, managed or controlled by AAC pursuant to Mich. Comp. Laws Ann. § 565.25. The notice of lis pendens is filed with respect to the very property that was transferred by AAC to the Trustee pursuant to

---

[3] The Court expresses no view, one way or the other, about Etterbeek's entitlement to any relief from this Court in the event that she prevails on any of her claims in the State Court Lawsuit.

the Term Sheet. The Court does not see how counts I through V of Etterbeek's complaint in the State Court Lawsuit could ever possibly effect this bankruptcy case. But there is nothing ambiguous about count VI or the notice of lis pendens filed by Etterbeek to preserve her rights under count VI. Etterbeek seems to be trying to get back the very property that was transferred by AAC to the Trustee under the Term Sheet when the Court granted the 9019 Motion. This could conceivably effect the bankruptcy estate, and could even transform the relief requested under count VI into a core proceeding should Etterbeek ask the state court to take jurisdiction over property of this bankruptcy estate or to compel the Trustee to take some action.

The Court finds that the State Court Lawsuit is a non-core, related to proceeding over which this Court has jurisdiction under § 1334(b). Because this Court has jurisdiction over the State Court Lawsuit, the Defendants' removal was proper under § 1452(a).

<u>Mandatory abstention</u>

The Motion to Remand argues that if this Court finds that it does have non-core, related to jurisdiction over Etterbeek's claims in the State Court Lawsuit, the Court is required to abstain from hearing those claims under the mandatory abstention provision in 28 U.S.C. § 1334(c)(2), which reads as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.), 113 F.3d 565, 570 (6th Cir. 1997), the Sixth Circuit Court of Appeals identified the elements that are necessary for mandatory abstention to apply: (1) there must be a timely motion for mandatory abstention filed by the party requesting abstention; (2) the civil proceeding that is the subject of the motion must be based upon a state law claim or cause of action; (3) the civil proceeding must lack a basis for federal jurisdiction absent the bankruptcy case; (4) the civil proceeding must be commenced in a state forum of appropriate jurisdiction; (5) the civil proceeding must be capable of timely adjudication in the state forum; and (6) the civil proceeding must be a non-core proceeding.

As explained earlier, the claims in the state court lawsuit are non-core proceedings. The Motion to Remand was timely filed by Etterbeek. All of the claims in the State Court Lawsuit are based upon state law claims or causes of action. The Defendants have not identified a federal jurisdictional basis for the claims filed in the State Court Lawsuit absent the Debtor's bankruptcy case. Etterbeek filed the State Court Lawsuit in the Wayne County Circuit Court, a state forum of appropriate jurisdiction. There is no evidence in the record, nor any contention made by the Defendants, that the State Court Lawsuit is not capable of timely adjudication by the Wayne County Circuit Court. All of the elements of mandatory abstention are present. Therefore, the Court is required to abstain from hearing the State Court Lawsuit.

### Permissive abstention

Even if the Court were to accept the Defendants' contention that the State Court Lawsuit includes core proceedings – which it does not –the Court may still permissively abstain from hearing the State Court Lawsuit under 28 U.S.C. § 1334(c)(1), which provides as follows:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Because "the interest of justice" and "the interest in comity" are fluid concepts, courts

look at many factors in determining whether to apply permissive abstention, including

(1)     the effect or lack of effect on the efficient administration of the estate if a court abstains;

(2)     the extent to which state law issues predominate over bankruptcy issues;

(3)     the difficulty or unsettled nature of the applicable state law;

(4)     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)     the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)     the substance rather than form of an asserted "core" proceeding;

(8)     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     the burden of this court's docket;

(10)    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial;

(12)    the presence in the proceeding of nondebtor parties; and

(13)    any unusual or other significant factors.

-22-

Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (citations omitted).  See also Cordes v. Continental Holdings, Inc. (In re Continental Holdings), 158 B.R. 442, 446 (Bankr. Ohio 1993) (same).  Although there is a split of authority in other circuits as to whether abstention under § 1334(c) applies to a case removed under § 1452, the Sixth Circuit has held, without comment, that a court may consider abstention "'even though a case has been removed pursuant to 28 U.S.C. § 1452.'"  XL Sports, Ltd. v. Lawler, 49 Fed. Appx. 13, 20 (6th Cir. Oct. 8, 2002) (quoting Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579, 584 n.3 (6th Cir. 1990)).

Several of the identified factors are applicable here.  First, there will be no effect on the efficient administration of the bankruptcy estate based upon whether the claims in the State Court Lawsuit are heard by this Court or by the Wayne County Circuit Court.  Either way, the litigation over such claims is in its infancy.  No answer to the complaint has been filed and no discovery has been taken.  It is irrelevant to the bankruptcy estate whether Etterbeek's claims are adjudicated in the federal system or the state system.  The claims either affect how the Trustee administers the property of the bankruptcy estate or they don't.  In either case, the Trustee will have to continue to administer the property of the bankruptcy estate knowing full well of the existence of such claims.  To the extent that the Trustee seeks to sell the subject property, the Trustee will have to evaluate whether § 363 permits him to do so in light of Etterbeek's claims.  The Trustee must make this evaluation either way.  There is no evidence in the record to support a finding that it will somehow be more efficient for the Trustee if Etterbeek

prosecutes her claims in one court rather than the other.[4]  The Court expresses no view one way or the other either about the merits of Etterbeek's claims or about whether or how such claims may affect the Trustee's administration of this bankruptcy estate.  The salient point is that, whatever effect Etterbeek's claims may have, it is the same whether they are adjudicated in state or federal court.

Second, all of the claims in the State Court Lawsuit are purely state law claims, based either upon statutory or common law in Michigan.  Not one of the counts in the State Court Lawsuit is premised upon, or even mentions, any section of the Bankruptcy Code or any law other than Michigan law.

Third, as noted earlier, all of the parties to the State Court Lawsuit are non-debtors. Etterbeek's claims do not seek relief against the Debtor, the Trustee or the bankruptcy estate.

Fourth, there is certainly no evidence of forum shopping by Etterbeek.  Etterbeek tried to raise some of the very same claims that she now makes in the State Court Lawsuit as an objection to the 9019 Motion.  The Court overruled Etterbeek's objection to the 9019 Motion, explaining in detail why it did not have jurisdiction over her claims against AAC and other non-debtors, *in the context of the 9019 Motion*, and why such claims did not provide a basis to deny the Trustee's request for approval *for the Trustee* to enter into the Term Sheet.  Having once failed to persuade this Court to hear her claims – all of which seek relief under state law

---

[4] To further complicate matters, Etterbeek has made a demand for a jury trial.  And because she did not consent to have this Court conduct the jury trial, it will be the District Court, and not this Court, that will ultimately try the case if it remains in the federal system.  See Local Rule 9015-1(b) (Bankr. E.D. Mich.) and E.D. Mich. Local Rule 83.50.

against non-debtor parties – Etterbeek has now brought these claims in Wayne County Circuit Court.  That is not forum shopping in any sense.

In sum, to the extent that they are present at all in this instance, all of the factors that courts traditionally look at when considering permissive abstention under § 1334(c)(1), weigh heavily in favor of this Court abstaining from hearing the State Court Lawsuit.

<u>Remand</u>

Finally, in addition to abstention, the Motion to Remand also requests the Court to remand the State Court Lawsuit under 28 U.S.C. § 1452(b), which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  Under § 1452(b), the Court "may remand . . . on any equitable ground." The equitable factors that courts consider include:

1.    duplicative and uneconomical effort of judicial resources in two forums;

2.    prejudice to the involuntarily removed parties;

3.    forum non conveniens;

4.    a holding that a state court is better able to respond to a suit involving questions of state law;

5.    comity considerations;

6.    lessened possibility of an inconsistent result; and

7.    the expertise of the court in which the matter was pending originally.

<u>Cordes v. Continental Holdings, Inc.</u>, 158 B.R. at 444 (citations omitted).  "While the grounds relevant to equitable remand do not align perfectly with those for permissive abstention, '[t]he analysis under § 1334(c)(1) is largely the same as under § 1452(b).'"  <u>Rachmale v. Conese</u>,

515 B.R. 567, 573 n.8 (Bankr. E.D. Mich. 2014) (quoting In re National Century Fin. Enterpr., Inc. Inv. Litig., 323 F. Supp. 2d 861, 885 (S.D. Ohio 2004)).

For the same reasons that the Court discussed when considering permissive abstention under § 1334(c)(1), the Court concludes that the State Court Lawsuit should also be remanded to the Wayne County Circuit Court under § 1452(b).

## CONCLUSION

The Court holds that Etterbeek's claims in the State Court Lawsuit are non-core proceedings, related to the Debtor's bankruptcy case. As such, the Court does have jurisdiction over Etterbeek's claims under § 1334(b). Therefore, the Defendants' removal of the State Court Lawsuit under § 1452(a) was proper. However, the Court holds that all of the elements for mandatory abstention under § 1334(c)(2) are present. Therefore, the Court will abstain from hearing the State Court Lawsuit. And even if the Court were to hold – which it does not – that Etterbeek's claims in the State Court Lawsuit include core proceedings as well as non-core, related proceedings, the Court further holds that this case is appropriate for both permissive abstention under § 1334(c)(1), and remand under § 1452(b). Accordingly, the Motion to Remand is granted. The Court will prepare a separate order consistent with this opinion.

Signed on December 10, 2014

                                          /s/ Phillip J. Shefferly
                                    Phillip J. Shefferly
                                    United States Bankruptcy Judge